## Anita E. Rosnick *v.* Aetna Casualty and Surety Company

House, C. J., Loiselle, Bogdanski, Longo and Barber, Js.

Argued November 4, 1976—decision released February 22, 1977

*Vincent R. Falcone* and *Harold L. Rosnick,* with whom, on the brief, were *Sigmund L. Miller* and *William J. Cousins,* for the appellant (plaintiff).

*Gregory C. Willis,* with whom was *Frederick W. Christie,* for the appellee (defendant).

HOUSE, C. J. This is an appeal from a judgment rendered by the Superior Court granting the defendant's motion for summary judgment and denying a similar motion made by the plaintiff. The action was brought for a declaratory judgment to determine whether the "hit-and-run" clause in the uninsured motorist provisions of an automobile insurance policy issued by the defendant was in derogation of the statutory minimum requirements for such coverage so that the plaintiff, Anita E. Rosnick, was in fact covered for injuries sustained in an accident.

The facts of the case are not in dispute. On September 14, 1970, the plaintiff was driving an automobile owned by her in a westerly direction on route 84 in Hartford. As a result of a negligent changing of lanes by the driver of a tractor-trailer without warning or signal, the plaintiff was caused to swerve suddenly and collide head-on with a guardrail on the highway. As a result of this accident, the plaintiff sustained personal injuries. There was no contact or collision between the automobile driven by the plaintiff and the tractor-trailer nor was the identity of the tractor-trailer or of its driver ever determined.

The defendant, Aetna Casualty and Surety Company, had issued a contract of automobile liability insurance to the plaintiff in July, 1970, and it was in effect on the date of the accident in question.

The policy contained an uninsured motorist provision entitled "Family Protection Coverage" which obligated the defendant to pay all sums which the plaintiff would be legally entitled to recover as damages for bodily injuries caused by the owner or operator of an "uninsured automobile." The term "uninsured automobile" was defined to include a trailer of any type and to include a "hit-and-run automobile" which, in turn, was defined to mean "an automobile which causes bodily injury to an Insured arising out of physical contact of such automobile with the Insured or with an automobile which the Insured is occupying at the time of the accident, provided: . . . there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile.' "

The defendant claimed that there was no coverage for the plaintiff in this case under the terms of the policy, since there was no physical contact between the plaintiff's automobile and the motor vehicle which caused the accident. The plaintiff claimed that the policy requirement for physical contact is in derogation of the statutes of the state of Connecticut and regulations which were promulgated thereunder by the insurance commissioner and that the requirement of physical contact was void.

The trial court concluded that the requirement of physical contact between the motor vehicles of a hit-and-run driver and the plaintiff contained in the uninsured motorist portion of the policy was not a restriction of the statutory mandatory uninsured motorist coverage in Connecticut and thus was not in derogation of the applicable statutes, but was actually an extension of the coverage required

by the legislature in the applicable statute, § 38-175c of the General Statutes, in effect in 1970, and the regulations promulgated thereunder.

The plaintiff made three assignments of error, all of which relate to the principal issue at trial: Is the requirement of physical contact between the motor vehicle of a "hit-and-run" driver (specifically and accurately described as a "force-and-run" driver in the Superior Court's finding) and the plaintiff's vehicle, as provided in the uninsured motorist provisions of a standard automobile insurance policy and the policy in question, a restriction of uninsured motorist coverage made mandatory by statute and the regulations promulgated thereunder in the state of Connecticut and, thus, in derogation of the applicable statutory law or is it an appropriate extension of the coverage required by the legislature as of September 14, 1970?

At the time of the accident in question, the controlling statutes were those adopted by 1967 Public Acts, No. 510, which were amended by 1969 Public Acts, No. 202, and incorporated into the General Statutes as §§ 38-175a through 38-175d, the relevant portions of which are printed in the footnote.[1] The

---

[1] "[General Statutes] Sec. 38-175a. MINIMUM PROVISIONS IN AUTOMOBILE LIABILITY POLICIES. (a) . . . [T]he insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger automobiles registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, proper damage liability, medical payments and uninsured motorists coverages under such policies and shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages. . . ."

"[General Statutes] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. Every such policy shall provide insurance in accordance with such

administrative regulation adopted by the insurance commissioner is § 38-175a-6, entitled "Minimum provision for protection against uninsured motorists," which provided: "The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured caused by an accident involving the uninsured automobile. This coverage shall insure the occupants of every automobile to which the bodily injury liability coverage applies. 'Uninsured automobile' includes an automobile insured against liability by an insurer that is or becomes insolvent."

On the date of the accident, there was in effect an automobile insurance policy with "Family Protection Coverage" issued by the defendant to the plaintiff. The policy contained a provision which, in relevant part, reads as follows: "Coverage G–Family Protection (Damages for Bodily Injury) To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an unin-

---

regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . ."

"[General Statutes] Sec. 38-175d. POLICIES DEEMED TO PROVIDE COVERAGE IN ACCORDANCE WITH REGULATIONS. Policies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38-175a to 38-175e, inclusive, apply shall be deemed to provide insurance under such coverages in accordance with such regulations. Policies affording medical payments coverage to which the provisions of said sections apply shall be deemed to provide insurance under such coverage in accordance with such regulations."

sured automobile because of bodily injury . . . sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile. . . . '[U]ninsured automobile' includes a trailer of any type and means: (a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or (b) a hit-and-run automobile; . . . 'hit-and-run automobile' means an automobile which causes bodily injury to an Insured arising out of physical contact of such automobile with the Insured or with an automobile which the Insured is occupying at the time of the accident, provided: . . . there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile.' "

This court decided similar questions to the ones raised in this case in *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 363 A.2d 1055. At issue in *Weingarten* was the interpretation of the same statutory and regulatory provisions in question here. In *Weingarten* we concluded that the applicable statutory and regulatory provisions did not require coverage in situations such as the present case where the vehicle causing the accident was "unidentified," as distinguished from "uninsured," and where there was no physical contact between it

and the plaintiff's vehicle. We there stated (p. 507):
"The statute and regulations do not define 'uninsured motorist' or in any way refer to what
are commonly called hit-and-run operators. They
merely require that every policy contain 'uninsured
motorist coverage.' ' "[C]ourts cannot read into the
terms of a statute something which manifestly is
not there in order to reach what the court thinks
would be a just result." *State* v. *Malm*, 143 Conn.
462, 467, 123 A.2d 276. Much less does the plaintiff's unfortunate circumstance justify this court's
disregarding the legislative mandate that words
used in statutes "shall be construed according to
the commonly approved usage of the language."
General Statutes § 1-1. A due regard for the differing functions of the legislative and judicial
branches of government requires that the courts
refrain from rewriting, under the pretext of interpretation, the clearly expressed language of a legislative enactment which the court deems to be preferable to that which the legislation requires. "In the
field of legislation, the legislature is supreme.
Courts must apply legislative enactments according
to their plain terms." *State* v. *Malm*, supra.'
*Simonette* v. *Great American Ins. Co.*, 165 Conn.
466, 471, 339 A.2d 453. An 'uninsured motorist'
clearly is not the same as an 'unidentified motorist'
and '[a] court will not torture words to import
ambiguity where the ordinary meaning leaves no
room for ambiguity, and words do not become
ambiguous simply because lawyers or laymen contend for different meanings.' *Marcolini* v. *Allstate
Ins. Co.*, 160 Conn. 280, 284, 278 A.2d 796."

The facts in the *Weingarten* case partially differ
from those in the present case in that the plaintiff's
insurance policy in *Weingarten* did not extend unin-

sured motorist coverage to "hit-and-run" situations. In the present case, the insurance policy expressly extended coverage beyond the minimum statutory requirements and did include "hit-and-run" situations with an appropriate limitation for coverage of injury in the requirement of physical contact between a vehicle and the insured or a vehicle occupied by the insured at the time of the accident. There is no reason to penalize the defendant in this case because it expressly extended, with an understandable limitation, its coverage to a broader class of risk than that required by statutory or regulatory provisions.

The trial court properly concluded that "[t]he requirement for 'physical contact' between the motor vehicles of a force-and-run driver and the plaintiff contained in the uninsured motorist portion of a standard automobile policy was not a restriction of the statutory mandatory uninsured motorist coverage in the State of Connecticut, thus not in derogation of the applicable statutes, but actually an extension of the coverage required by the Legislature." Under the circumstances, it properly granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment.

There is no error.

In this opinion LOISELLE and BARBER, Js., concurred.

BOGDANSKI, J. (dissenting). The issue is whether the defendant's policy as governed by the General Statutes and the insurance regulations affords uninsured motorist protection to the plaintiff in a case

where there was no physical contact between the vehicle of the alleged tortfeasor and that of the plaintiff.

The interpretation of insurance policies is governed by two considerations: (1) the intention of the parties as revealed by the policy provisions, and (2) the fact that contracts of private parties cannot vary obligations imposed by law. *Panaroni* v. *Johnson,* 158 Conn. 92, 104, 256 A.2d 246. The extent of coverage to which an insured is entitled under his policy is governed by the General Statutes and regulations of the insurance commissioner which by force of law take precedence over any conflicting policy provision.[1]

· Section 38-175a-6 of the regulations of Connecticut state agencies, entitled "Minimum provision for protection against uninsured motorists," sets forth the coverage to which the plaintiff is entitled. That regulation stated: "The insurer *shall* undertake to *pay . . . all sums* which *the insured shall be legally entitled* to recover as damages . . . caused by an accident involving the uninsured automobile." (Emphasis added.) That regulation mandates that an insurer shall be liable to an insured for the minimum coverage for bodily injuries resulting from an accident involving an

[1] "[Regs., Conn. State Agencies] Sec. 38-175a-6. MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS. (a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured caused by an accident involving the uninsured automobile. This coverage shall insure the occupants of every automobile to which bodily injury liability coverage applies. 'Uninsured automobile' includes an automobile insured against liability by an insurer that is or becomes insolvent. . . ." See also footnote 1 of the majority opinion.

uninsured automobile. Neither the statutes nor regulations make any exceptions to that minimum coverage. In this case, however, the policy provides that no such minimum coverage shall apply where there is no physical contact between the vehicle of the unidentified motorist and that of the plaintiff. Since that policy provision is expressly contrary to the provisions of the statutes and regulations, it must give way to the obligation imposed by law. *Panaroni* v. *Johnson,* supra, 104.

Quite consistent with the considerations mandating minimum uninsured motorist coverage, the legislature nowhere provided that physical contact be a prerequisite to recovery. The courts cannot on the basis of private contract provisions whittle down obligations imposed by law. *State Farm Fire & Casualty Co.* v. *Lambert,* 291 Ala. 645, 285 So. 2d 917; *Balestrieri* v. *Hartford Accident & Indemnity Ins. Co.,* 22 Ariz. App. 255, 526 P.2d 779; *Farmers Ins. Exchange* v. *McDermott,* 527 P.2d 918, 920 (Colo. App.); *DeMello* v. *First Ins. Co. of Hawaii, Ltd.,* 55 Hawaii 519, 523 P.2d 304; *Webb* v. *United Services Automobile Assn.,* 227 Pa. Super. 508, 323 A.2d 737; *Bryant* v. *State Farm Mutual Automobile Ins. Co.,* 205 Va. 897, 140 S.E.2d 817; *Hartford Accident & Indemnity Co.* v. *Novak,* 83 Wash. 2d 576, 520 P.2d 1368; cf. *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 277, 231 A.2d 531.

An argument that the contact requirement is reasonable is untenable. "The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the . . . [trier of fact]. If the injured party can sustain the burden of proof that an accident did occur, he should be

entitled to recover, regardless of the actuality of physical contact." *Brown* v. *Progressive Mutual Ins. Co.*, 249 So. 2d 429, 430 (Fla.).

Moreover, independent of the terms of the policy, the legislature has required minimum uninsured motorist coverage.[2] In so doing, Connecticut has followed the majority of jurisdictions. In requiring that coverage, the state has considerations other than that of protecting the accident victim from financial disaster. In Connecticut the minimum coverage is part of a plan to encourage the financial responsibility of motorists. 12 H.R. Proc., pt. 8, 1967 Sess., p. 3296. The purchase of liability coverage benefits the individual, the insurance company and the public. The policy protects the insured against the uninsured public, and the public against a motorist who would otherwise be uninsured. *Touchette* v. *Northwestern Mutual Ins. Co.*, 80 Wash. 2d 327, 332–33, 494 P.2d 479. The intent to close off gaps on insurance coverage has been consistently manifested, most recently in the enactment of Connecticut's no-fault insurance law. See General Statutes, c. 690; *Gentile* v. *Altermatt,* 169 Conn. 267, 363 A.2d 1.

I would find error, set aside the judgment and remand the case with direction to render summary judgment in favor of the plaintiff.

In this dissenting opinion LONGO, J., concurred.

---

[2] See footnote 1 of the majority opinion.